UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH OZORMOOR,

       Plaintiff,

v.

METROPOLITAN LIFE
INSURANCE COMPANY,

       Defendant.

_____/

Case No.  4:25-cv-10710
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

### REPORT AND RECOMMENDATION TO GRANT IN PART DEFENDANT'S RENEWED MOTION FOR SANCTIONS (ECF No. 23)[1] [2]

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

[2] Although there is a split in authority regarding whether a magistrate judge must proceed by Report and Recommendation (R&R) on a motion for sanctions under Fed. R. Civ. P. 37 where the requested relief is dispositive, the undersigned will proceed by R&R out of an abundance of caution.  *See Coach, Inc. v. Dequindre Plaza, L.L.C.*, No. 11-CV-14032, 2013 WL 2152038, at *2 n.1 (E.D. Mich. May 16, 2013) ("Because several judges in this district have viewed a report and recommendation proper in this scenario, and because this Court sees no need to depart from this practice, this Court will make a recommendation to the District Court regarding the pending motion." (collecting cases)); *but see Bell-Flowers v. Progressive Ins. Co.*, No. 04-3026 BP, 2005 WL 3434818, at *2 n.1 (W.D. Tenn. Dec. 13, 2005) ("The majority of courts to consider the issue have concluded that when a party brings a motion for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion.").

## I.      Introduction

This is a civil case regarding a life insurance policy.  Plaintiff Joseph Ozormoor, an attorney proceeding *pro se*, is suing defendant Metropolitan Life Insurance Company (MetLife) claiming breach of contract, breach of fiduciary duties under Michigan law, statutory conversion, and intentional infliction of emotional distress.  *See* ECF No. 12.  All pretrial matters have been referred to the undersigned under 28 U.S.C. § 636(b)(1).  (ECF No. 5).

Before the Court is MetLife's renewed motion for sanctions, in which they ask the Court to dismiss the case with prejudice and award them attorney's fees and costs associated with having to file and respond to the various motions related to Ozormoor's refusal to sit for his deposition.  (ECF No. 23).  Ozormoor has responded (ECF No. 28), and MetLife has replied (ECF No. 29).  For the reasons discussed below, the undersigned RECOMMENDS that the motion be GRANTED IN PART, such that MetLife be awarded attorneys' fees and costs.

## II.      Background

MetLife removed this case to federal court on March 13, 2025.  (ECF No. 1).  After the parties submitted a discovery plan, a scheduling order was entered setting the discovery due date as July 22, 2025, and the dispositive motion due date as September 22, 2025.  (ECF No. 9).  On May 2, 2025, Ozormoor filed an amended complaint, and the parties thereafter stipulated to extend the discovery

deadline to September 26, 2025, and the dispositive motion deadline to November 21, 2025.

On September 26, 2025, the last day of discovery, MetLife filed a motion to compel Ozormoor to appear for a deposition and for sanctions against him for his failure to appear at a properly noticed deposition. (ECF No. 15). On October 28, 2025, the Court granted the motion in part and ordered Ozormoor to sit for a deposition. (ECF No. 19). The parties were instructed to advise the Court of the date of the deposition to allow the discovery deadline to be extended for 45 days from that date, and Ozormoor was warned that if he did not appear, MetLife could renew its motion for sanctions. (*Id.*, PageID.373).

On November 17, 2025, in lieu of sitting for his deposition, Ozormoor filed a motion for a protective order limiting the location, duration, start time, scope, and attendance of his deposition. (ECF No. 21). On December 1, 2025, MetLife filed the present renewed motion for sanctions under Fed R. Civ. P. 30(d)(2) and 37(d), requesting dismissal of the case with prejudice and attorneys' fees and costs based on Ozormoor's continued refusal to sit for a deposition and the multiple associated motions. (ECF No. 23). Then, on December 3, 2025, the Court denied Ozormoor's motion for a protective order, again informing Ozormoor that he was expected to attend his deposition as re-noticed by MetLife. (*Id.*, PageID.577). Ozormoor was warned that his "failure to appear or otherwise cooperate in

3

scheduling the deposition may result in sanctions, including attorney fees and costs and dismissal."[3]  (*Id.*, PageID.577-578).

Then, on December 22, 2025, Ozormoor filed a motion for interlocutory appeal of the order overruling his objections and the underlying order denying his motion for a protective order.  (ECF No. 30).  The district judge denied this motion on January 7, 2026, instructing that "[t]he costs, expenses, and burden Defendant has incurred in the defense of this motion shall be considered in the context of its pending Renewed Motion for Sanctions."  (ECF No. 32, PageID.681).

Two days later, on January 9, 2026, Ozormoor filed a motion to compel requesting that the Court "designate the city of Detroit in Wayne County, Michigan as the convenient and proper location for the deposition of Plaintiff ordered by the Court, and permit the deposition to be taken in two sessions of three and a half hours duration per day, starting time of 11 am or later on any date agreed to by the parties in consideration of Plaintiff's state of health."[4]  (ECF No. 33, PageID.698). In its response, MetLife requested that the costs, expenses, and burden of

---

[3] On December 10, 2025, Ozormoor filed objections to the undersigned's order denying his motion for a protective order (ECF No. 26), which were overruled by the district judge the next day (ECF No. 27).  As MetLife was not required to respond to these objections, and indeed did not, the objections will not be considered for the purposes of the present motion.

[4] Before the motion to compel and the present motion for sanctions could be decided, Ozormoor filed a motion for summary judgment.  (ECF No. 35).  This motion will be the subject of a future Report and Recommendation after briefing is complete.

responding to the motion be considered in the context of the present motion for sanctions. (ECF No. 34, PageID.723). On March 20, 2026, the Court denied this motion, again ordering Ozormoor to sit for his properly noticed deposition and warning him that his continued refusal may result in further sanctions, including a recommendation that his case be dismissed. (ECF No. 37).

## III.    Legal Standard

Under Fed. R. Civ. P. 30(d)(2), "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Sanctions may also be imposed under Fed. R. Civ. P. 37(d) if a party fails to appear for its own deposition. Fed. R. Civ. P. 37(d)(3) outlines the sanctions the Court may impose, which "may include any of the orders listed in Rule 37(b)(2)(A)(i) —(vi)," but further elaborates that "[i]nstead of or in addition to these sanctions, the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." (emphasis added).

## IV.    Discussion

MetLife asks the Court to impose sanctions in the form of dismissal of the case with prejudice and attorney's fees and costs incurred in filing and responding

5

to the various motions necessitated by Ozormoor's refusal to sit for his deposition.

(ECF No. 23, PageID.506).  It says that these sanctions are warranted because

Ozormoor has repeatedly impeded, delayed, and frustrated MetLife's efforts to

take his deposition.  (*Id.*, PageID.501).  The undersigned agrees insofar as MetLife

requests attorney's fees and costs.

So far, MetLife's attempt to depose Ozormoor has been the subject of four

separate motions, not including the present motion for sanctions.  MetLife filed a

motion to compel after Ozormoor initially refused to sit for his deposition.  The

parties' dealings that led to that motion were summarized in the undersigned's

order, as follows:

> In the motion, MetLife explains that it reached out to Ozormoor on August 13 and 18, 2025, to schedule his deposition, but received no response.  (*Id.*, PageID.223-224).  On August 21, 2025, having still received no response, MetLife noticed Ozormoor's deposition for September 9, 2025, via email and first-class mail.  (*Id.*, PageID.224).  On August 27, 2025, Ozormoor emailed MetLife a list of outstanding discovery responses and objected to the taking of his deposition, stating that due to "constraints on his time" he would prefer only written discovery, but that he was "willing to grant [MetLife] in-person deposition if necessary at a convenient time and place," which he indicated would be in the last week of discovery.  (*Id.*; ECF No. 15-2, Deposition Scheduling Emails).
>
> On September 3, 2025, MetLife indicated that it would be willing to adjourn Ozormoor's deposition to closer to the end of discovery as long as he was willing to allow MetLife to seek follow-up discovery as necessary after the discovery period closed.  (ECF No. 15, PageID.224).  In response, Ozormoor continued to object to the deposition, stating that he did not see the "benefit or need of it" given that they could obtain the same objective with written discovery and because it would be

6

"extremely difficult to accommodate in [his] office schedule." (*Id.*, PageID.225; ECF No. 15-2, PageID.243). On September 5, 2025, MetLife responded by offering to take the deposition at Ozormoor's office and again asked for dates and times if the September 9, 2025 deposition did not work for Ozormoor. (ECF No. 15, PageID.225). Ozormoor again responded by asking why a deposition was necessary. (*Id.*, PageID.225-226; ECF No. 15-2, PageID.241-242).

On September 8, 2025, counsel for MetLife asked Ozormoor if he would be at the noticed deposition or if he would provide alternative dates and times, and he responded:

> Of course I won't be available for any deposition tomorrow. As you know we have not agreed on any particular date for a deposition, and I have indicated that I am not available for any variety of a deposition format any time before the final week of the discovery period because of pressing demands on my time and other issues… If you have a need for discovery, you can submit inquiries by another set of these more convenient discovery tools. Yes, deposition is one of the discovery tools provided in the rules but it is not mandatory to use every discovery tool in the rules if the objective of your discovery quest can be accomplished by any of the other tools, unless the objective of the request is just to oppress and harass and inconvenience the target.

> (ECF No. 15-2, PageID.240). Ozormoor did not appear at the scheduled deposition.

(ECF No. 19, PageID.367-369).

After Ozormoor was ordered to sit for his deposition, he filed a motion for a

protective order. The parties' relevant dealings were as follows:

> On October 28, 2025, counsel for MetLife, Michelle Czapski, reached out to Ozormoor to schedule his deposition. (ECF No. 22-4, PageID.472). Having received no response, Czapski sent a follow-up email two days later requesting that Ozormoor provide some dates that would work for him. (*Id.*, PageID.471). Ozormoor did not respond with dates, so Czapski suggested November 11, 18, 19, or 25 in the

firm's Troy office.  (*Id.*, PageID.470).  She also requested that Ozormoor reserve the day as she did not know how long the deposition would take.  (*Id.*).  In response, Ozormoor said he was available on November 11 after 10:30 a.m. and requested that the deposition take place in the Detroit office, at the U.S. Courthouse in Detroit, or by phone.  (*Id.*, PageID.469).  Czapski responded that they could hold the deposition in the Detroit office but that it would change her availability, and suggested November 13 instead.  (*Id.*, PageID.468-469).  Ozormoor responded that November 13 would work and that he would be there at 12 p.m., "give or take 10 minutes."  (*Id.*, PageID.468).

Czapski again responded that she did not know how long the deposition would take and whether it would take up the entire allotted seven hours, but that they should start at 9 or 10 a.m. in the morning just in case the entire time was needed.  (*Id.*, PageID.467).  Ozormoor said that he could stay for as long as required.  (*Id.*).  Czapski then responded that she would set the deposition for 10 a.m. so her staff would not be required to stay after hours and because there was an event in the Detroit office that evening.  (*Id.*).  Ozormoor responded that 10 a.m. was not convenient for him and that he would try to be there by 11 a.m. instead, but he would prefer a 12 p.m. start time, again reiterating that it would not be a problem for him to stay later.  (*Id.*, PageID.465).  The parties then went back and forth several more times, with Czapski again explaining that a 10 a.m. start time would ensure that if the deposition took the entire seven hours, her staff would not be required to stay past regular business hours, and Ozormoor again responding that he could not attend before 11 a.m. and did not understand the problem (despite counsel explaining that business hours ended at 5 p.m.).  *See id.*, PageID.462-464.

On November 10, 2025, Czapski responded to Ozormoor stating that because he would not agree to an earlier start time and she could not accommodate an evening deposition due to staffing and a scheduled evening event on November 13, she re-noticed the deposition to November 18 at 10 a.m. at counsel's *Troy* office.  (*Id.*, PageID.461).  She asked that Ozormoor provide alternate dates when he would be available for the entire business day in Troy if that date did not work for him.  (*Id.*).  In response, Ozormoor indicated that he would attend the deposition on November 13 at 11 a.m. at counsel's *Detroit* Office and if Czapski could not attend, he would file a motion for a protective

8

order.  (*Id.*, PageID.460).

(ECF No. 24, PageID.572-573).

When Ozormoor was denied a protective order and again ordered to sit for his deposition and when his objections to that order were overruled, he filed a motion for a certificate of appealability.  This was denied.  Then, as all Ozormoor's attempts to avoid sitting for a deposition had failed, Ozormoor filed a motion to compel requesting that the Court set the location of the deposition to the city of Detroit, Michigan, and permit the deposition to be taken in two sessions of 3.5 hours each, starting at 11 a.m. or later.  This motion was again denied.

In total, Ozormoor's refusal to sit for his deposition has required MetLife to file (1) a motion to compel and associated reply (ECF Nos. 15, 18); (2) a response to Ozormoor's motion for a protective order (ECF No. 22); (3) a response to Ozormoor's certificate for appealability (ECF No. 31); and (4) a response to Ozormoor's motion to compel (ECF No. 34).  The final three came after Ozormoor had already been ordered by this Court to sit for his deposition.

Overall, MetLife has attempted *numerous* times to schedule Ozormoor's deposition, it has properly noticed his deposition three times, *see* ECF No. 34-2, and still Ozormoor has stonewalled, even after being ordered to sit for the deposition multiple times.  Ozormoor's refusal has not only resulted in MetLife having to expend continuous effort since August 2025 to schedule his deposition,

9

but it has also caused unnecessary delay in the case; in the order granting MetLife's original motion to compel, the Court ordered the parties to notify as to the date of the deposition once scheduled so the Court could extend the scheduling order deadlines.  However, as the deposition was never scheduled, the Court has been unable to do so, and the case has been in a state of limbo.  Ozormoor then filed a motion for summary judgment, requiring MetLife to furnish a response before taking Ozormoor's deposition.

Ozormoor argues that MetLife's attempts to schedule his deposition were in bad faith.  However, even a cursory reading of the emails between the parties shows that MetLife's counsel has been honestly attempting to find a mutually agreeable date and time for the deposition *for months*, repeatedly asking Ozormoor for dates that he would be available if the provided ones did not work.  Instead of participating in good faith with the efforts to schedule, Ozormoor repeatedly refused requests to provide agreeable dates or show up on time, despite repeated explanation of counsel's business hours and unwillingness to make their staff stay late to accommodate the deposition.  Ozormoor was also explicitly warned that the Court would consider sanctions if he did not sit for his deposition.

Ozormoor also argues that sanctions should not be awarded for his failure to show up to his second properly noticed deposition because he had a pending motion for a protective order.  However, as MetLife points out, the deposition was

10

noticed for November 18, 2025, and Ozormoor filed his motion for a protective

order on November 17, 2025, one day prior.  Ozormoor is correct that he warned

MetLife he would file this motion, however, he omits the remainder of the context.

After noticing the deposition, counsel requested that he provide alternative dates

that he would be available if that date did not work for him.  In response, rather

than provide dates, Ozormoor responded that he would attend a deposition on

November 13 at counsel's Detroit office; a date, time, and location, that had

already been ruled out by MetLife due to Ozormoor's refusal to start the deposition

before 11 a.m.  He then warned that he would file a motion for a protective order.

Therefore, Ozormoor had notice of the deposition well beforehand and

despite having the opportunity to propose an alternate date, he waited until the day

before to file a motion for a protective order.  "A deponent served with a properly

noticed Rule 30(b)(6) deposition does not avoid sanctions by filing a last-minute

motion for protective order in hopes of skirting the consequences of its

misconduct." *EMW Women's Surgical Ctr., P.S.C. v. Bevin*, No. 3:17-CV-189-

GNS, 2018 WL 10229473, at *4 (W.D. Ky. Sept. 28, 2018).  Only "a protective

order filed in good faith without dilatory tactics or strategic timing may excuse a

party from attending a noticed deposition." *Id.*  As it appears from all of the

parties' communications, this is not the case here.

11

Ultimately, under Fed. R. Civ. P. 37, MetLife's motion should be granted in part such that Ozormoor be required to pay the attorney's fees and costs associated with MetLife having to file and respond to the various motions necessitated by Ozormoor's conduct, as MetLife requests.  This means the costs associated with MetLife's motion to compel (ECF No. 15), Ozormoor's motion for a protective order (ECF No. 21), the present motion for sanctions (ECF No. 23), Ozormoor's motion for certificate for appealability (ECF No. 30), and Ozormoor's motion to compel (ECF No. 33).  At this time, the undersigned does not recommend that the case be dismissed, especially considering Ozormoor's pending motion for summary judgment and MetLife's responding request that the Court grant summary judgment in its favor instead, therefore providing the Court the opportunity to decide the case on its merits.  (ECF No. 36).  That said, although dismissal is a harsh sanction, Ozormoor's actions to date come very close, if not on the precipice, to such a sanction being appropriate.  *See United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) ("[I]t is presumed that dismissal is not an abuse of discretion if the party has the ability to comply with a discovery order but does not.").

## V.    Conclusion

For the reasons discussed above, the undersigned RECOMMENDS that MetLife's motion for sanctions (ECF No. 23) be GRANTED IN PART, such that

12

MetLife be awarded attorney's fees and costs associated with filing and responding to the motions related to Ozormoor's refusal to sit for his deposition.

Dated: March 20, 2026                          s/Kimberly G. Altman
Detroit, Michigan                              KIMBERLY G. ALTMAN
                                               United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

13

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on March 20, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager